STATE, Respondent, v. KEEBLE, Appellant.

(207 N. W. 456.)

(File No. 5735.   Opinion filed February 24, 1926.)

**1. Criminal Law—Trial—Refusal of Court to Advise Acquittal Not Prejudicial, Jury Not Being Bound by Advice.**

Reversible error cannot be predicated on the refusal of court to advise an acquittal; for, inasmuch as court cannot direct an acquittal, but can only advise, which advice may be disregarded by the jury, refusal to advise cannot be said to be prejudical.

**2. Crimnal Law — Appeal and Error — Insufficiency of Evidence Raised by Motion for New Trial.**

Insufficiency of evidence to support verdict should be raised by motion for new trial on ground that verdict is not sustained by the evidence.

**3. Homicide—Trial—In Prosecution of Husband for Killing Wife, Excluding Daughter's Imputation of Unchastity to Wife, a Fact Admitted, Held Not Prejudicial.**

In prosecution for murder of wife, where it was contended that conduct of wife had resulted in defendant becoming insane, exclusion of testimony of defendant's daughter as to wife's illicit relationship with another, held not prejudicial, where such relationship was practically admitted.

**4. Criminal Law—Jury—Instructions—Cautionary Instruction as to Reasonable Doubt Imperative, Where General Charge Might Be Understood by Juror as Authorizing Him to Agree with Majority.**

A cautionary instruction as to reasonable doubt is imperative when requested, where juror might understand from general charge that he was authorized to agree with majority, though not fully convinced from the evidence.

**5. Criminal Law—Instructions—Trial—Refusal of Cautionary Instruction on Reasonable Doubt Held Error, in View of Charge Urging Jury to Get Together.**

In a murder prosecution, it was error for the court to refuse a requested cautionary instruction as to reasonable doubt, where court, in general charge, urged jury to get together, to pay proper respect to each other's opinions, and listen to each other's arguments.

**6. Homicide—Evidence—Act of Accused Must Contribute to Death of Deceased.**

Shooting of deceased, who died from pneumonia, to constitute murder, must have caused death or caused pneumonia.

7. **Criminal Law—Verdict—All Jurors Must Honestly Concur in Verdict.**

Verdict of guilty must be honest conclusion of all jurors.

8. **Homicide—Instructions—Manslaughter—Error to Give Instruction Admonishing Jurors to Agree on Guilt of Murder or Not Guilty, Without Instructing Them as to Included Offenses.**

In a prosecution for murder, where evidence was sufficient to support verdict of manslaughter in first degree, assault with intent to kill, or assault with intent to do bodily harm, it was error for court to give an instruction urging jury to agree on guilt of murder or not guilty of any crime, without instructing them as to such included offenses.

Appeal from Circuit Court, Day County; Hon. James J. Batterton, Judge.

Jonas Keeble was convicted of murder, and he appeals. Reversed, and cause remanded.

*Van Slyke & Agor* and *Campbell & Fletcher,* all of Aberdeen, and *Howard Babcock,* of Sisseton, for Appellant.

*Buell F. Jones,* Attorney General, and *Bernard A. Brown,* of Pierre, for the State.

BURCH, C. In the May, 1924, term of the circuit court of Day county, appellant was tried and convicted upon an information charging murder, and was sentenced to life imprisonment in the state penitentiary. At the time of the homicide he was 38 years of age, married, and had a family of five children. He and his wife were both Indians and he was a lay reader or preacher in the Indian Church near Enemy Swim. He lived with his family until a few months prior to the tragedy at Pickerel Lake, north of Waubay on the east side of the lake. George Barse, also an Indian, lived on the west side, and for some time appellant's wife had been in the habit of crossing the lake, going to the Barse place and remaining until late hours of the night. In the fall of 1923, Barse moved with his family to Waubay, and shortly thereafter appellant and his family moved to Waubay and lived in the same house with Barse. A few weeks later Mrs. Barse abandoned her husband and took her children and went to her relatives at Sisseton. Appellant was away from home frequently, attending to his duties, and after Mrs. Barse left, appellant's wife and children were alone in the house with Barse, both day and night. In

October, 1923, on his return from an absence of several days, he says Barse entered his wife's bedroom under such circumstances as to convince him that Barse and his wife were criminally intimate. He arose and tried to induce his wife to leave with him, but she refused. He then took one of his children and that night went to his mother's house on Pickerel Lake. For several months appellant's wife continued to live with Barse, and during this time appellant made repeated efforts to get her to return to him and to his home which he had provided on Pickerel Lake. He solicited her to return both in person and through friends who went to see her. He asked her to return for the sake of their children and for the sake of his work and promised to forgive her, but she refused to leave Barse. On the day of the tragedy, March 18, 1924, he went to the Barse place, with a revolver in his pocket. He explained that he carried the revolver at night when traveling and that it was in his pocket at the time, not through design, but because he had forgotten to take it out before leaving home. When he arrived at Barse's place, he found his wife there, and asked to talk with her. The two stepped into an adjoining room and talked a short time. While the two were in the room together, two shots were heard, and appellant was seen to run from the house. After throwing the revolver in a pit under an elevator, he went back to Pickerel Lake, where he was later arrested. When the shots were fired, Mrs. Keeble was heard screaming, and, when the door was opened, she was found with a bullet wound in her chest and one under the right arm. She said her man had shot her. She was taken to a hospital, and it was found that one ball had passed through the right lung and lodged in the back near the spinal column and the other had struck the ribs on the right side, fractured one or two and passed out without entering the chest. Shortly after she developed pneumonia, on the third day gave premature birth to a child, and on the fourth day after the shooting died. The state's witnesses agreed that death resulted from pneumonia as the primary or immediate cause, but the hospital physicians, witnesses for the state, say the gunshot wounds may have caused the pneumonia by infecting deceased with pneumonia germs. However, they do not say there was any evidence of infection in the wounds or in the right lung through which the bullet passed, and they admit that, if she was infected at the

time of the wound, the shooting did not cause the pneumonia. They also say the premature chidlbirth was caused by pneumonia and not by the shooting. They say the wounds were not necessarily fatal and probably would not have caused her death, unless by infection. Appellant's defense was insanity.

[1, 2] At the close of all the testimony appellant asked the court to advise a verdict on the ground that the evidence was insufficient to show that the shooting caused the death of the deceased, and insufficient to support the verdict, and assigns as error the refusal of the court to so advise the jury. In the case of State v. Stone, 137 N. W. 606, 30 S. D. 23, we held that reversible error cannot be predicated upon the refusal of the court to advise an acquittal. The court cannot direct an acquittal, it can only advise, and this advice may be disregarded by the jury, so we cannot say that refusal to so advise is prejudicial. If the evidence is deemed insufficient to support the verdict, it should be raised by a motion for new trial upon the ground that the verdict is not sustained by the evidence.

[3] Appellant related many things in connection with the conduct of his wife which convinced him of her infidelity, and, among these, said his daughter had told him that his wife and Barse occupied the same bed on numerous occasions. He offered his daughter as a witness to corroborate this fact and to corroborate his statements, and the testimony of the daughter was excluded. He assigns this as error. The conduct of the wife was claimed to have preyed upon the mind of appellant, causing him to brood and worry, as a result of which he became insane.. A very full recital of all the facts claimed to have caused his trouble was testified to by appellant. That the wife had abandoned her husband and chosen to live with Barse in illicit relations was not seriously disputed, but was practically admitted. We think, under the record before us, the exclusion of the daughter's evidence was not prejudicial to appellant.

[4, 5] Appellant assigns error in the refusal of the court to give the following requested instruction:

"You are instructed that, if any one of your number, after having considered all the evidence in this case, and after having consulted with his fellow jurymen, should entertain a reasonable

doubt of the defendant's guilt, then and in such case you cannot convict the defendant."

This court had a similar instruction under consideration in the case of State v. Magnuson 48 S. D. 112, 202 N. W. 638, and State v. Phelps, 59 N. W. 471, 5 S. D. 480, and in these cases we held that, where the individual responsibility of each juror is sufficiently plain from the charge as a whole, it is not reversible error to refuse such instruction, although it may properly be given. We are not disposed to recede from the holdings in the above-cited cases, but the need of such cautionary instruction depends upon the character of the general charge; and, where language is used which might be understood by a juror as authorizing him to agree with the majority, although not fully convinced from the evidence, the giving of such cautionary instruction, when requested, is imperative. In this case the court gave an instruction sanctioned by good authority and approved by us in the case of State v. Egland, 121 N. W. 798, 23 S. D. 323, 139 Am. St. Rep. 1066, as follows:

"And it is also proper for the court to remind you that you should try to come to an agreement in this case. The only mode provided by our laws for deciding questions of fact in criminal cases is by the verdict of a jury. In a large proportion of cases, and perhaps ,strictly speaking, in all cases, absolute certainty cannot be attained or expected. Although the verdict to which a juror agrees must, of course, be his own verdict, the result of his own convictions, and not a mere acquiescence in the conclusion of his fellows, yet, in order to bring 12 minds to a unanimous result, you must examine the questions submitted to you with candor, and with a proper regard and deference to the opinions of each other. You should consider that the case must at some time be decided; that you are selected in the same manner, and from the same source, from which any future jury must be, and there is no reason to suppose that this case will ever be submitted to 12 men more intelligent, more impartial, or more competent to decide it ,or that more or clearer evidence will be produced on the one side or the other. And, with this view, it is your duty to decide the case, if you can conscientiously do so. In order to make a decision more practicable, the law imposes the burden of proof on one party or the other in all cases. In the present case the

burden of proof is upon the state to establish every part of it, beyond a reasonable doubt; and if, in any part of it, you are left in doubt, the defendant is entitled to the benefit of the doubt, and must be acquitted. But, in conferring together, you ought to pay proper respect to each other's opinions, and listen, with a disposition to be convinced, to each other's arguments. And, on the one hand, if much the larger number of your panel are for a conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable one, which makes no impression upon the minds of so many men, equally honest, equally intelligent with himself, and who have heard the same evidence, with the same attention, with an equal desire to arrive at the truth, and under the sanction of the same oath. And, on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves whether they may not reasonably, and ought not to, doubt the correctness of a judgment which is not concurred in by most of those with whom they are associated, and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows."

[6-8] Exception was taken to this instruction, but the court gave it, giving as his reason therefor that it had been approved in State v. Egland, and he felt it should be given in this case. This instruction, properly understood, may be all right, but it is an appeal to the jury to get together. While the jury are urged to "pay proper respect to each other's opinions, and listen, with a disposition to be convinced, to each other's arguments," in its final analysis, it is an urge to the minority to give greater consideration to the views of the majority, because they are the views of the majority, without cautioning the majority to give equally due deference and consideration to the views of the minority. One honest doubter may be right, and it is as much the duty of the eleven to give open-minded and candid consideration to the views of the one as for him to give open-minded and candid consideration to the views of the eleven. Unless all are open-minded, candid, and sincere, there is a very real danger that a wrong conclusion will be reached by all-considered verdicts through the over confidence of numbers. After such instruction, more than ever is it necessary to impress each juror with his individual responsibility for the verdict that he renders. He must not be allowed

to think that a majority should prevail or think that the fact that a majority view the case in a different light is any evidence in the case to be considered by him in making up his own mind; at most it is only a fact to be considered as a warning against hasty conclusions. It does not tend to prove the guilt or innocence of the defendant. In this case it is not difficult to see how an honest doubt might exist as to the fact of the killing by the defendant; and the more discriminating and logical the mind the more likely the doubt.

The hospital physicians were agreed that the immediate cause of death was pneumonia. In order to constitute murder, however, the shooting must have been the proximate cause of the death, either mediate or immediate; in other words, the shooting must have caused the death or caused the pneumonia. Conceding the evidence is sufficient to sustain the verdict, if the jurors are satisfied therefrom that defendant killed his wife, still it is essential that that be the honest conclusion of all. In giving the admonition to agree the court did not give the jury the law applicable to the case and ask them to find the facts. He gave them only a portion of the law and asked them to agree that the defendant was guilty of murder, or not guilty of any crime, although the evidence was sufficient to support a verdict of manslaughter in the first degree, assault with intent to kill, or assault with intent to do bodily harm. The court ,with propriety, on its own motion, might have submitted the included offenses, but ,instead of doing so, two of five appropriate verdicts are selected, and the jury are urged to agree upon one of the two verdicts selected by the court. From a practical standpoint we have this situation. The evidence tends to show a heinous offense. The jury may have scruples against finding defendant guilty of murder, but they know that there will be a miscarriage of justice to acquit him; then, without advising them of any middle ground on which they may all readily agree, the jury are admonished to agree, so they will not seek a way out by disagreement, and defendant is left to speculate on the result. True, no instructions as to included offenses were asked, and we are not disposed to hold that it was error not to so instruct in the absence of a request, but it was error to give the instruction admonishing the jury to agree, without instructing them as to included offenses, or expressly cautioning them as to their indi-

vidual responsibility by giving the instruction requested, or its equivalent.

The judgment of the circuit court and the order overruling the motion for a new trial are reversed, and the cause remanded.

GATES, P. J., not sitting.