**People of the State of Illinois, Plaintiff-Appellee, v. Timothy Richards, Defendant-Appellant.**

**Gen. No. 51,200.**

First District, Second Division.

May 14, 1968.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn and James J. Doherty, As-

sistant Public Defenders, and Bruce L. Bower, Winston, Strawn, Smith & Patterson, of counsel), for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and John M. Goldberg, of counsel), for appellee.

MR. JUSTICE LYONS delivered the opinion of the court.

The defendant, Timothy Richards, was indicted upon the charge of attempted robbery in that he, "with the intent to commit the offense of robbery, attempted to take the property of Harrison E. Stout by threatening the imminent use of force, . . . ." Defendant was subsequently tried before a jury which returned a verdict of guilt as charged in said indictment, sentence being imposed upon him for a term of from not less than five (5) nor more than ten (10) years in the Illinois State Penitentiary. Defendant's post-trial motions for a new trial and in arrest of judgment were thereafter denied by the court, from which denial he brings this appeal.

Defendant requests a review of his conviction upon but a single and limited issue. It is his basic position that prejudicial error was committed below by the trial judge's charge to the jury, over objection, of a certain supplemental instruction, which instruction was calculated to and offered for the sole purpose of obtaining a hastened verdict from the jury. Defendant submits by his theory that either the general form of instruction employed was inherently, or per se, coercive as a matter of law or, that this instruction as given and applied to the facts of the instant case had like effect. He argues that in either event the instruction operated in such a way as to deprive him of his constitutional rights to trial by jury and due process of law.

431

The State, on the other hand, offers persuasive argument to demonstrate that such "Allen type" supplemental instructions (as they are commonly referred to by the parties) have been countenanced and sanctioned by the overwhelming weight of both state and federal court decisions since first recognized by the United States Supreme Court in the namesake case of Allen v. United States, 164 US 492 (1896). This the State suggests notwithstanding the "Allen type" charge's otherwise admitted design to expedite the deliberations of a deadlocked jury and hence alleviate the hung jury situation. While we find, and the parties stipulate, that this problem area has been resolved in numerous jurisdictions, the precise questions posed by its implementation in the case at bar present a case of first impression in the State of Illinois.

As the defendant argues the prejudicially compounding impact of this instruction from within the factual context of the evidence adduced at trial, a brief review of the evidence is in order.

Defendant was shown to be a gainfully employed family man with a self-admitted prior criminal record for grand larceny in 1948. Defendant resided with his family in an apartment building located at 6543 Cottage Grove Avenue in the City of Chicago, at which residence he likewise served in his full-time occupation as a janitor. In the early afternoon hours of October 15, 1964, defendant was returning home from an automobile repair shop located at 1440 West 63rd Street (almost directly west of his residence) where he occasionally performed odd jobs to earn additional income. For reasons not explained by the accused, he thereafter proceeded to travel home by bus in an indirect route south on Ashland Avenue, disembarking in the process at 83rd Street to have a beer in a local tavern. Shortly thereafter, defendant entered a furniture or fixtures store in that immediate vicinity purportedly in search of some bargain furnish-

ings for the building where he was employed. Defendant testified in this regard to have had authority to make limited purchases in behalf of his employer, Mr. Knight, and that he, at that time, had $54 on his person with which to do so. These were facts uncontradicted by the prosecution.

It appears that the store premises were unoccupied except for a Mr. Harrison Stout, the proprietor, whom defendant testified he observed asleep in a chair as he walked past him, approaching the rear service area. Stout, who conceded that he may have been dozing, testified that he was disturbed by a knocking sound, as if someone were forcibly entering through the rear of his store, observed defendant at or near the rear door, and thereby was given cause to become suspicious of the defendant. It appeared by Stout's own admission that one and possibly both of the double doors to the rear of his showroom were, in fact, opened or unlocked at this time because he recalled, it had been a warm day. The record, however, is rather ambiguous in this respect.

Stout further testified that he confronted defendant near the rear entrance demanding to know his purpose in the store, whereupon, without response, he stated the accused brandished a revolver in a nervous or shaking fashion, pushed it into his stomach and told him to "get back." Stout further stated that even though he had removed his billfold in anticipation, defendant neither confiscated it nor, at any juncture, made a demand upon him for money or items of value. The witness added that he then managed to maneuver the defendant, by a turning motion, in such a way so as to cause him to trip backwards on a bar stool and momentarily lose his balance, further causing five 32-caliber bullets to spill onto the floor, apparently coming from defendant's pocket. Evidently frightened by this event, defendant took flight through the front door and was apprehended a short

time later hiding out in a nearby basement by investigating police. He offered no resistance.

Testifying in his own behalf, defendant denied having ever entertained an intent to commit any offense against the property or person of Mr. Stout. Endeavoring to account for his conduct in the store, defendant explained that his inconsistent actions were the product of being a negro finding himself in a predominantly white neighborhood and fearful that he could not reason with the obviously excited owner, then using the gun only to extricate himself from this unfavorable situation. Defendant alleged to have possessed the weapon (32-caliber, five-shot revolver) only for self-protection in conjunction with his janitorial duties, acknowledging in this regard, that while he never carried it loaded, there may have been one or two bullets in the gun's chambers during the altercation. It would appear however, from a brief soliloquy during argument relative to the admissibility of this weapon and the five bullets into evidence, that the Assistant State's Attorney then was of the position that the gun had been empty during the occurrence in question.

This was, in essence, the extent of the material portions of testimony and evidence propounded at the trial, which consumed en toto, the relatively brief period of approximately two hours in duration. After final arguments, and under instructions from the bench, to which no objection is presently made, the jury retired from the courtroom for deliberation. The jury having remained "out," as the expression is employed, for approximately 2½ hours without returning, the trial judge summoned them back. The jury foreman, upon inquiry from the bench, announced that his group was "hopelessly deadlocked." Thereupon, over strenuous objection of counsel for defendant, and upon the motion of the prosecution, the trial judge orally delivered an "Allen type" supple-

mental instruction to the jury, which instruction has been the sole subject matter of this appeal, to wit:

> "In a large proportion of cases absolute certainty cannot be expected. Although the verdict must be the verdict of each individual juror and not a mere acquiescence in the conclusions of others, yet you should examine the questions submitted with proper regard and deference for the opinions of each other, and you should listen to each other's opinions with a disposition to be convinced. It is your duty to decide the case if you can conscientiously do so. If a much larger number of jurors favor conviction, a dissenting juror should consider the reasonableness of his doubt when it makes no impression upon the minds of other jurors, equally intelligent and impartial, and who have heard the same evidence. If upon the other hand, the majority favors acquittal, the minority should ask themselves whether they might not reasonably doubt the correctness of their judgment.
>
> "If you should fail to agree on a verdict the case must be retried. Any future jury must be selected in the same manner and from the same source as you have been chosen, and there is no reason to believe that the case would ever be submitted to twelve men and women more competent to decide it, or that the case can be tried any better or more exhaustively than it has been here, or that more or clearer evidence could be produced on behalf of either side.
>
> "You may now retire and reconsider the evidence in light of the court's instructions."

Eighteen minutes later (as expressly noted in the Report of Proceedings as including the time for delivery of the charge, as well as the jury's adjournment from and

435

return to the courtroom), the jury returned to pronounce its verdict of unanimity as to the guilt of the accused. Defendant's subsequent poll of the jury disclosed that such a verdict had theretofore failed because of the opinions of two dissenting members who had changed their votes in the interim following the tender of the instruction.

While the court remains cognizant of the abbreviated nature of the trial court proceedings, we do not consider such a factor as a valid cause to ipso facto presuppose that the questions presented for jury determination were themselves open to ready resolve as the State suggests. To the contrary, on the facts as they appear before this court, we are of the belief that the jury was called upon to labor with a close and complex legal question relative to the element of intent said to have been entertained by defendant. Notwithstanding the tender of appropriate instructions on that subject, we think the State erroneously presumes the two to be somehow related. Frankly, from within this argument, the court has justifiable cause for suspicion, if for nothing else, the alarming brevity of the latter session of jury deliberation (eighteen minute maximum) under the auspices of this "Allen type" instruction.

With this in mind, we think the facts of the case speak for themselves. Suffice to say, the court is of the conviction that the jury below was confronted with a close factual question of innocence or guilt of the accused, thereby enhancing, it would follow, the reasonableness of any doubt which might have dwelled in the minds of these two dissenting jurors. Completely aside from the fact that the majority may have been wrong, we fail to perceive, other than by mere probabilities, the relationship between the vote of said majority and the reasonableness of the dissenting jurors' doubts, upon which tenuous relationship this "Allen type" instruction unfortunately found itself predicated.

436

The evidence from which they might have permissibly drawn defendant's intention to commit the offense of robbery was his use of an apparently unloaded revolver and subsequent flight, upon which precise subjects no inference instructions were offered by the State. These were circumstances, moreover, equally demonstrative of defendant's version of the case, credence for which is found in his undisputed failure to make some overt act or utterance towards seizing Stout's billfold or demanding from him anything of value. This is not to say that such a particular demand by word or deed need be shown to sustain a conviction for assault with intent to rob, a specific intent offense. People v. Hawkins, 54 Ill App2d 212, 203 NE2d 761 (1965). Nor do we choose to ignore defendant's unexplained reasons for arriving in the vicinity of the store in the first instance. Rather, we offer it only to bring further focus to the complexity of the singular determinations then about to be made by the jury. Accordingly, we cannot say with any certainty that this was an instance where doubt was created simply because some plausible excuse was offered by the accused.

The State, however, presents respectable authority in support of the giving of this charge. While somewhat embellished upon, the instruction at bar is recognized by this court as being in substantial conformity with the language of the original charge as it was first approved in Allen v. United States, 164 US 492 (1896), codified with modifications into the Manual on Jury Instructions in Federal Criminal Cases, § 7.07, 33 FRD 611 (1963), and followed with its numerous variants or derivatives by many cases decided at inferior federal and state court levels, the State offering decisions of every federal judicial circuit, as well as from twelve state reviewing courts. See 100 ALR2d 177.

Moreover, as accurately as we have been able to discern from our research, it would appear that the United

437

States Supreme Court has, as recently as May of 1967, denied writ of certiorari predicated upon the terms of a "mild version" of this specie of instruction thereby foreclosing somewhat upon speculation as to that court's present disposition on the matter. Burrup v. United States, 371 F2d 556 (CA 10th, 1967), cert denied, 386 US 1034 (5/8/67).[1] Inasmuch, however, as the question is one unprecedented in our jurisdiction, this court does not feel warranted, nor compelled, under the facts of the instant case, to summarily align its thinking with that of the weight of authority from the federal courts and courts of sister states.

We cannot dissuade ourselves from the position that this supplemental instruction as given, with recognition to the connotations readily obtaining from its phraseology, was the singularly procuring factor occasioning the verdict returned. We would furthermore consider it a practice in naiveté by our court to accede unhesitatingly to the palpable vice of this oft criticized "dynamite charge" (a term used to categorize its blasting effect upon the jury), under the circumstances as they exist here. 31 U Chi L Rev 386 (1964). Lest we are to abandon the safeguards inherent in unanimity of jury verdicts in this State, in the final analysis the question must always be whether the recitation of the words of this supplemental charge, or its equal, in the court's estimation, adversely affected independent jury deliberation and thinking.

Insight for a disposition in this regard is found in the admonitions of our Supreme Court in the case of People v. Golub, 333 Ill 554, 165 NE 196 (1929). There, under analogous circumstances, the trial judge remarked to a 9 to 3 deadlocked jury, "You ought not to have any difficulty in reaching a verdict on this evidence." On review, the court in holding that comment improper, but harmless error, on the record of the case, stated:

---

[1] For the specific issues presented by certiorari in Burrup v. United States, supra, consult 35 LW 3378.

"... A verdict should express the deliberate judgment of the jury. The juror, as well as the judge, has an independent duty to perform, and ought to be left free to pronounce his own conviction. A verdict hastened by the action of the judge, however worthy of motive, cannot be the result of that deliberation which the law guarantees. Remarks by a trial judge calculated to effect the rendition of a verdict without affording the jury an opportunity for careful consideration are unwarranted and often lead to great abuse. Whether the error is harmless or prejudicial depends upon the facts of the case. ..."

Cf. People v. Duszkewycz, 27 Ill2d 257, 189 NE2d 299 (1963). See also annotations at 100 ALR2d 191–195.

Here, the instruction goes without the bounds of comment criticized, but sanctioned, in Golub. The instruction in its second sentence makes a single and qualified reference to the importance of individual judgment. The instruction, in its fourth and fifth sentences, goes on to single out as its prominent theme and to stress that the minority alone should reflect upon the reasonableness of their doubt, inasmuch as it has failed to make an impression upon the minds of the majority. This has been aptly called the "heed the majority" theme. 31 U Chi L Rev 386 (1964). Significantly no such admonition is directed therein to the majority, who may remain adamant without violating its terms. By our interpretation, this is in effect a tacit suggestion to the unsophisticated members of the jury that the charge is addressed to the minority alone, the connotation being that the views of the majority are correct and should be regarded with deference simply because they prevail in number. State v. Randall, 137 Mont 534, 353 P2d 1054 (1960); State v. Keeble, 49 SD 456, 207 NW 456 (1926).

From within this framework, the instruction continues to conclude by devoting an entire paragraph to emphasize to the jury the futility of a retrial of the issues.

We think the utilization of this device in the instant case was the very type of discretionary abuse envisioned by the Golub court. Contrast instruction given in State v. Bozarth (Mo), 361 SW2d 819 (1962) and Mathes and Devitt, Federal Jury Practice and Instructions, § 15.16, p 165 (1965) wherein the need for individuality of judgment is afforded more than a disproportionately incidental treatment. The "Allen type" charge is furthermore said to create less likelihood of coercion if given before the jury indicates its inability to agree, Burrup v. United States, 371 F2d 556 (CA 10th, 1967).

We are of the opinion that an inference of such coercion upon the minority jurors arises, simply by virtue of the marked brevity of deliberation following the delivery of the charge. It is, in fact, a relevant consideration which has prompted and been the object of significantly distasteful note in several cases. Peterson v. United States, 213 F 920 (CA 9th, 1914); Stewart v. United States, 300 F 769 (CA 8th, 1924); Powell v. United States, 297 F2d 318 (CA 5th, 1961); State v. Thomas, 86 Ariz 161, 342 P2d 197 (1959); People v. Baumgartner, 166 Cal App2d 103, 332 P2d 366 (1958); and United States v. Rogers, 289 F2d 433 (CA 4th, 1961). There are, we wish to acknowledge, numerous cases wherein the brevity of subsequent deliberation prompted no such adverse inference. These authorities would appear, however, to have rejected such a contention only when confronted by evidence more strongly indicative of guilt, much on a parallel with the reasoning employed in the Golub case. The case of Andrews v. United States, 309 F2d 127 (CA 5th, 1962) is representative of such an instance.

To hold otherwise in the instant case would require this court to surmise that by the letter of the instruction given, the respective members of the jury each independently reviewed his doubt as to the totality of

the evidence adduced and, with a view to the opinions of one another, achieved unanimity, in a period of time agreed to be somewhere less than eighteen minutes. Such a hastened response is hardly demonstrative of a painstaking reevaluation of the same proofs which had theretofore steadfastly buttressed two dissenting views for 2½ hours, to the point of hopeless stalemate. Under such circumstances, the use of this "Allen type" charge must be deemed to have been tantamount to an exercise of judicially sanctioned undue influence or coercion upon the jury which the law cannot condone.

As its final point, the State submits that the use of an "Allen type" instruction serves a legitimate and bona fide purpose and hence should be sustained; i. e., the efficient administration of justice by avoidance of the expense and delay incident to the retrial of an accused. While, in principle, we have no quarrel with that proposition, we cannot fully appreciate the appropriateness of the argument to uphold defendant's conviction in the case at bar.

First, the "Allen type" charge is an admitted and vestigial last resort measure to exact or "blast" a verdict from a hung jury under the guise of a worthy and ostensibly valid purpose. This we submit is neither a relevant consideration nor, by the precedent of this State, the proper criteria to deny an accused that individual free thinking of each juror which the law holds inviolate. People v. Golub, 333 Ill 554, 165 NE 196 (1929).

Secondly, we submit, common experience as jurists has taught that the phenomena of a hung jury is such a rare instance in criminal proceedings as to be undeserving of an instruction avowed to ameliorate that end, particularly when overbalanced by the prejudice wrought upon an accused by its implementation in a case such as the one at bar. While the State's authority on the subject suggests the precise figure to be approxi-

mately 5% of all cases proceeding to trial (Kalven & Zeisal, The American Jury, p 453 (1966)), no such relevant statistic is logged by the administrative offices of the Circuit Court of Cook County, nor has our research succeeded in ascertaining an exact figure. It would further appear in repudiation of this contention that the aforesaid study project indicates that a hung jury almost never occurs unless the first ballot vote reflects a substantial (4 or more dissenting) division in opinion, 53 Va L Rev 123 (1967).

By its very nature the instruction has been held in at least one case to breed litigation rather than avoid it, State v. Thomas, 86 Ariz 161, 342 P2d 197 (1959), and would appear to be susceptible on review to a minimum of six different objections. 31 U Chi L Rev 386 (1964). We offer this response, however, not to condemn "Allen type" instructions as such, but rather only to demonstrate that the State's latter argument is no argument at all. 53 Va L Rev 123 (1967).

In view of our disposition on this matter, a reply to defendant's alternative challenge asking the court to arrest this practice in its incipiency, as a matter of law, would not be in order at this time, and to that end we offer no opinion. Suffice to say that from within the purview of the foregoing discussion, we cannot permit the instruction given on this record to operate as both the basis for defendant's conviction, as well as the foundation for its encouraged use in the future. Defendant, accordingly, is entitled to a new trial.

For the above reasons, the judgment is reversed and the cause remanded for a new trial.

Judgment reversed and cause remanded for a new trial.

BURKE, P. J. and McNAMARA, J., concur.