STATE, Respondent v. FERGUSON, Appellant

(175 N.W.2d 57)

(File No. 10736.  Opinion filed March 5, 1970)

**Dudley R. Herman,** Gregory, for defendant and appellant.

**Gordon Mydland,** Atty. Gen., **Jack DeVany,** Asst. Atty. Gen., Pierre, for plaintiff and respondent.

HANSON, Judge.

The grand jury of Jones County returned eight indictments against the defendant, James Smith Ferguson, M.D. Each charged him with unlawfully obtaining a narcotic drug for his own use in violation of SDC 22.1317. All of the alleged offenses involved prescriptions written by defendant and filled by the Murdo Drug Store between February 17, 1966 and August 30, 1966. The eight offenses were consolidated for trial on September 10, 1968 and terminated on September 20, 1968 with the jury rendering five verdicts of "guilty" and three "not guilty" verdicts.

Defendant challenges the propriety of a supplemental "Get-Together" instruction given to the jury after the case had been submitted.

It appears the case was submitted to the jury at 11:15 a. m. on Thursday, September 19, 1968. Near midnight the jury reported difficulty arriving at a verdict. Upon request of the foreman the testimony of one witness was read back by the court reporter and the court gave a clarifying instruction. At 9:15 Friday morning the jury again returned to the courtroom at which time the foreman reported the jury had arrived at a verdict on all eight indictments. However, when the jury was polled two of the jurors indicated they had "rendered a verdict on paper, but not in mind." The jury was polled again with instructions to answer "yes" or "no" to the poll. Two jurors responded in the negative.

After the poll showed the jury stood 10 to 2 for conviction the trial court, over defendant's objection, gave the following supplemental instruction:

"Members of the Jury:

"You have been what is called polled, and according to this poll, it indicates to the Court that you have been unable to agree on a verdict as yet.

"This jury is a cross-section of the citizens of Jones County. A jury trial is the only way our law provides for the determination of the guilt or innocence of an accused. We have no reason to believe that any other jury selected in Jones County would be any better able to determine this case than are you.

"As indicated in the previous instructions, it is the duty of jurors to give careful consideration to the views of their fellow jurors. The minority should understand that there is substantial evidence, or an absence of evidence, sufficient to convince the majority in their view. On the other hand, those members of the jury who have adopted a majority view must respect the views of the minority. It is the function of the jury to reach a verdict, and in doing this, each juror should listen carefully and weigh the opinions of his fellow jurors with a view in mind of being convinced and reaching a decision. This, of course, does not mean that if any juror genuinely has a reasonable doubt as to the guilt of the defendant as distinguished from a mere possibility or conjecture he or she should be expected to yield simply because that view is in the minority.

"With this additional instruction taken together with all the other instructions, the Court asks you again to attempt to reach a unanimous verdict in this case."

The jury returned shortly after noon on Friday and rendered unanimous verdicts of "guilty" as to Indictments 3, 4, 6, 7 and 8 and "not guilty" verdicts as to Indictments 1, 2 and 5. These were received and accepted by the court and the jury was discharged.

Most courts in this nation have at one time or another approved the use of conciliatory instructions as a proper means of unlocking a hung jury. The theme of these instructions stems from the one approved in the 1851 Massachusetts case of Commonwealth v. Tuey, 62 Mass. (8 Cush.) 1, as follows:

" 'The only mode, provided by our constitution and laws for deciding questions of fact in criminal cases, is by the verdict of a jury. In a large proportion of cases, and perhaps, strictly speaking, in all cases, absolute certainty cannot be attained or expected. Although the verdict to which a juror agrees must of course be his own verdict, the result of his own convictions, and not a mere acquiesence in the conclusions of his fellows, yet, in order to bring twelve minds to a unanimous result, you must examine the questions submitted to you with candor, and with a proper regard and deference to the opinions of each other. You should consider that the case must at some time be decided; that you are selected in the same manner, and from the same source, from which any future jury must be; and there is no reason to suppose that the case will ever be submitted to twelve men more intelligent, more impartial, or more competent to decide it, or that more or clearer evidence will be produced on the one side or the other. And with this view, it is your duty to decide the case, if you can conscientiously do so. In order to make a decision more practicable, the law imposes the burden of proof on one party or the other, in all cases. In the present case, the burden of proof is upon the commonwealth to establish every part of it, beyond a reasonable doubt; and if, in any part of it, you are left in doubt, the defendant is entitled to the benefit of the doubt, and must be acquitted. But, in conferring together, you ought to pay proper respect to each other's opinions, and listen, with a disposition to be convinced, to each other's arguments. And, on the one hand, if much the larger number of your panel are for a conviction, a dissenting juror should consider whether a doubt in his own mind is a reasonable

one, which makes no impression upon the minds of so many men, equally honest, equally intelligent with himself, and who have heard the same evidence, with the same attention, with an equal desire to arrive at the truth, and under the sanction of the same oath. And, on the other hand, if a majority are for acquittal, the minority ought seriously to ask themselves, whether they may not reasonably, and ought not to doubt the correctness of a judgment, which is not concurred in by most of those with whom they are associated; and distrust the weight or sufficiency of that evidence which fails to carry conviction to the minds of their fellows.' "

An instruction of this nature was later approved by the United States Supreme Court in the 1896 case of Allen v. United States, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528. It was from the title of this case that such instructions became generally known as the "Allen charge". Instructions of this nature are also referred to as "dynamite charges" because of their blasting effect on juries.

The inclusion of an Allen charge in the original instructions to the jury was sanctioned by this court in State v. Egland (1909), 23 S.D. 323, 121 N.W. 798, 139 Am.St.Rep. 1066, and qualifiedly approved in State v. Keeble (1926), 49 S.D. 456, 207 N.W. 456, in the following language:

"This instruction, properly understood, may be all right, but it is an appeal to the jury to get together. While the jury are urged to 'pay proper respect to each other's opinions, and listen, with a disposition to be convinced, to each other's arguments,' in its final analysis, it is an urge to the minority to give greater consideration to the views of the majority, because they are the views of the majority, without cautioning the majority to give equally due deference and consideration to the views of the minority. One honest doubter may be right, and it is as much the duty of the 11 to give open-minded and candid consideration to the views of the one as for him

to give open-minded and candid consideration to the views of the 11. Unless all are open-minded, candid, and sincere, there is a very real danger that a wrong conclusion will be reached by ill-considered verdicts through the over confidence of numbers. After such instruction, more than ever is it necessary to impress each juror with his individual responsibility for the verdict that he renders."

Since the Keeble case, conciliatory charges in this state have been commonly referred to as "get-together" instructions and have been sparingly used in criminal cases.

The Keeble case was quoted extensively by the Washington court in State v. Ring, 52 Wash.2d 423, 325 P.2d 730, in which a reconciliation instruction was held to be improper. Likewise, the Keeble case was cited with approval in People v. Richards, 95 Ill.App.2d 430, 237 N.E.2d 848, in which an "Allen-charge" was held to be reversible error and its use condemned in future cases. In answering the state's contention that an "Allen-charge" serves a legitimate purpose in the efficient administration of justice by avoiding the expense and delay incident to retrials the Illinois court said:

"First, the 'Allen type' charge is an admitted and vestigial last resort measure to exact or 'blast' a verdict from a hung jury under the guise of a worthy and ostensibly valid purpose. This we submit is neither a relevant consideration nor, by the precedent of this State, the proper criteria to deny an accused that individual free thinking of each juror which the law holds inviolate. People v. Golub, 333 Ill. 554, 165 N.E. 196 (1929).

"Secondly, we submit, common experience as jurists has taught that the phenomena of a hung jury is such a rare instance in criminal proceedings as to be undeserving of an instruction avowed to ameliorate that end, particularly when overbalanced by the prejudice wrought upon an accused by its implementation in a case such as the one at bar."

The Arizona court no longer sanctions the giving of an "Allen-charge". After approving of it in three prior cases it condemned its use in State v. Thomas, 86 Ariz. 161, 342 P.2d 197, because it "is not in keeping with sound justice and the preservation of human liberties and security. We are convinced that the evils far outweigh the benefits, and decree that its use shall no longer be tolerated and approved by this court".

Likewise, Montana discouraged its further use in State v. Randall, 137 Mont. 534, 353 P.2d 1054, 100 A.L.R.2d 171 as "The inevitable effect of the instruction would be to suggest to the minority members of the jury that they ought to surrender their own convictions and follow the majority."

Many other courts have disapproved of "Allen-charges" because of the unbalanced wording of the particular instruction, its timing, or other facts surrounding its giving. See Anno. 100 A.L.R.2d 177, 53 Am.Jur., Trial, §§ 954, 955, 956 and 957; 89 C.J.S. Trial § 481; and critical reviews in Vol. 53 Virginia Law Review 123 and Vol. 31 U. of Chicago L.Rev. 386.

The Advisory Committee on Minimum Standards Relating to Trial by Jury in its commentary under Section 5.4(a) "concluded that the instruction commonly referred to as the Allen charge or 'dynamite charge' should not be given to a jury which has been unable to agree after some deliberations. Nonetheless, it is most appropriate for the court to instruct the jury initially as to the nature of its duties in the course of deliberations, and section 5.4(a) so provides." The Committee cited Instruction 8.11 of Jury Instructions and Forms for Federal Criminal Cases, 27 F.R.D. 39, 97-98 (1961) reading as follows as being consistent with Section 5.4(a) of the Standards:

"The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.

"It is your duty, as jurors, to consult with one another and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment. Each of you must decide the case for yourself, but do so only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if convinced it is erroneous. But do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors, or for the mere purpose of returning a verdict.

"You are not partisans. You are judges—judges of the facts. Your sole interest is to ascertain the truth from the evidence in the case."

█ █ In the present case the supplemental "get-together" instruction was given to the jury 22 hours after the case had been submitted. The numerical and individual division of the jurors was known on the ultimate issue of guilt. Whether or not the instruction had a coercive effect is unknown and unprovable. However, urging agreement of the jury under the circumstances of this case cannot be condoned. To assure an independent jury verdict in this case a new trial must be granted. To assure the integrity and independence of criminal jury verdicts in the future the use of supplemental get-together instructions is not commended.

█ Another issue requires consideration, as it no doubt will arise on retrial. This relates to defendant's contention that certain admissions made by him to Laverne E. Gooder, a Federal Narcotics Agent, were inadmissible in evidence as he was not prewarned or advised of his right to remain silent and of his right to counsel.

In this respect it appears that Dr. Ferguson had a Federal Narcotic Stamp. Agent Gooder was in Murdo on December 6, 1966 making a preliminary field investigation of apparent ex-

cessive narcotic drug purchases made by defendant from various wholesale drug companies. A copy of each order is required to be sent to the Bureau of Narcotics and Dangerous Drugs. Agent Gooder contacted defendant in his home about noon. He identified himself and explained the purpose of his visit. He asked defendant to accompany him to his office so he could examine his narcotics records which were required to be kept. Defendant refused and told the agent he knew his rights. Defendant then told the agent he didn't keep any records and most of the Demerol he had been purchasing was administered to his wife. This is the incriminating admission complained of.

There was further conversation about defendant's narcotic stamp and the condition and future treatment of Mrs. Ferguson. Defendant first agreed to voluntarily surrender his narcotic stamp and then refused after he learned cancellation would extend for a period of two years. The stamp was not taken up or ever canceled so far as the record shows. In the course of the conversation defendant also agreed, at the suggestion of Agent Gooder, to place Mrs. Ferguson under the care of another doctor and if she needed narcotics they would be prescribed by the other doctor. The interview took place in the Ferguson trailer home in the presence of defendant's wife and minor children and lasted an hour and a half to two hours.

Before admitting such testimony in evidence the trial court conducted a hearing outside the presence of the jury. The court found that at the time Agent Gooder was conducting a preliminary investigation to obtain facts concerning what appeared to be an unusual amount of Demerol acquired by defendant; no criminal action was then pending or anticipated against defendant for narcotic violations; the investigation was primarily concerned with what measures, if any, should be taken with reference to defendant's narcotics stamp and his acquisitions of the drug "Demerol". At the time of the interview defendant was not in custody or otherwise deprived of his freedom by any authorities and the interview was not conducted in a police dominated atmosphere; there was no coercion, force, trickery,

or promises employed in connection with the making of the alleged admissions; the purpose of the interview was not for the purpose of obtaining incriminating evidence upon which to build a criminal prosecution against the doctor; the alleged admissions were made by defendant before the investigation had reached the accusative stage as defined in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, since no unsolved crime or law violation was then known as the apparently excessive purchases of Demerol by defendant could be explained and could be perfectly legal under his narcotics stamp.

As the trial court properly concluded, the alleged admissions by defendant were not rendered inadmissible because of failure to give the warnings prescribed in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974. The circumstances surrounding the interview do not constitute the kind of custodial interrogation condemned in Miranda. At the time. defendant had not been taken into custody or otherwise deprived of his freedom in any significant way. In fact he asserted and exercised his right to freedom by refusing to accompany Agent Gooder to his office to inspect his narcotic records.

Unlike the case of Mathis v. United States, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381, defendant was not confined or under restraint for an unrelated offense. Nor was he under "virtual arrest" as in Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311. He was in the familiar surroundings of his own home and family. He was not suspected of committing an unsolved crime. He was not under actual or virtual arrest and was not threatened with any criminal prosecution and no federal prosecution followed. The admissions were made during a preliminary fact-finding field investigation.

■ To render an admission or confession inadmissible as self-incriminating there must be "some kind of compulsion". Hoffa v. United States, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374. In imposing its new requirements on police interrogation in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10

A.L.R.3d 974, the court significantly said it did "not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence."

Reversed and new trial granted.

All the Judges concur.

BIEGELMEIER, Judge, (concurring).

I concur in the opinion that it was error to give only the Allen get-together instruction after the jury had retired and twice indicated difficulty in arriving at a verdict, without giving the cautionary instruction refused in the cited State v. Keeble opinion. The situation is then different and it was unnecessary for defendant to request that instruction.