STATE of South Dakota, Plaintiff
and Appellee,

v.

Jan McNAMARA, Defendant
and Appellant.

No. 13625.

Supreme Court of South Dakota.

Considered on Briefs Sept. 7, 1982.

Decided Oct. 20, 1982.

Mikal Hanson, Asst.Atty.Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty.Gen., Pierre, on brief.

Catherine G. Ortner, Hot Springs, for defendant and appellant.

DUNN, Justice.

This is an appeal from a conviction of grand theft of livestock under SDCL 22–30A–17.[1] We affirm.

Jan McNamara (appellant) was employed by the Fall River Feedlot (feedlot), a commercial cattle feeding operation, as an assistant to the feedlot yard foreman. Appellant's duties at the feedlot included riding pens, doctoring and moving cattle, taking care of horses, and, in the event heifers in the feedlot had calves, selling those calves.

On or about August 30, 1980, appellant had a discussion with the lot manager at the feedlot concerning the possibility of a purchase of calves for appellant's mother. The lot manager testified that he told appellant a purchase could be arranged so long as they knew which cattle were involved and what pens they were out of so they could establish a price.

The following day, August 31, 1980, appellant sold five calves to Rick Roberts, a Nebraska rancher. Roberts originally made out a check payable to the feedlot for the full amount of $325. Thereafter, at appellant's direction, Roberts destroyed the check and made out two checks, one to the feedlot for $135, and the other for $190, with the payee slot left blank. Supposedly, separate checks were required because the calves came from separate pens. Appellant subsequently filled in his own name as payee on the second check and cashed it.

On September 26, 1980, Roberts received a phone call from appellant who told him the feedlot had objected to the way he sold the calves. To correct the situation appellant stated he was having the feedlot take the value of the calves out of his paycheck. This required appellant to return to Roberts the $135 check payable to the feedlot, and it required Roberts to make out a new check in the amount of $90 payable to appellant. Appellant stated his status as an employee allowed him to purchase the calves at a cheaper rate and he would pass along the savings to Roberts.

Several days later, Roberts received the $135 check in the mail along with a note and a self-addressed stamped envelope from appellant. Later that same day, Roberts received his bank statement and saw that appellant had filled in his own name on the

1. SDCL 22–30A–17 provides:

Theft is grand theft, if:
(1) The value of the property stolen exceeds two hundred dollars;
(2) The property stolen is livestock or a firearm;
(3) Property of any value is taken from the person of another; or
(4) In the case of theft by receiving stolen property, the receiver is a dealer in stolen property, the value of the property stolen exceeds two hundred dollars in value, or the property stolen is livestock or a firearm.

Theft in all other cases is petty theft. Grand theft is a Class 4 felony. Petty theft is divided into two degrees. Petty theft of one hundred dollars or more is in the first degree and is a Class 1 misdemeanor. Petty theft of less than one hundred dollars is in the second degree and is a Class 2 misdemeanor.

$190 check and had cashed it. Roberts became suspicious and called the feedlot general manager, who investigated the matter. The inquiry revealed no record of the sale and no knowledge of the sale by the feedlot management. Thereafter, appellant was charged with five counts of grand theft of livestock. That charge was later amended to one count of grand theft of livestock.

At trial, appellant claimed he had purchased three of the calves from the feedlot for his mother. Appellant testified he received authorization to purchase three calves for $190 from the lot manager during their August 30, 1980, conversation. Appellant then claimed he resold the three calves to Roberts for $190 and he believed the feedlot was going to take the sale price of those calves out of his paycheck. As to the other two calves, appellant claimed he forgot to turn in the $135 check and upon discovering it he decided to embezzle it. Appellant claimed he never intended to steal livestock and thus he should not be guilty of grand theft. The jury found appellant guilty of grand theft.

Appellant contends the trial court erred in failing to charge the jury with the lesser included offenses of petty theft for the $190 check and attempted petty theft for the $135 check. We do not agree.

■ In *State v. Oien,* 302 N.W.2d 807 (S.D.1981), this court stated that there are two tests for determining whether an offense is "necessarily included" in a greater offense, one legal and the other factual. Both tests must be satisfied before a "necessarily included" offense instruction is given. To meet the legal test, the trial court must be satisfied that:

(1) the elements of the included offense must be fewer in number than the elements of the greater offense, (2) the penalty for the included offense must be less than the greater charged offense, and (3) the two offenses must contain common elements so that the included offense must be such that the greater offense

cannot be committed without also committing the lesser.

*Id.* at 809.

■ The third component is not met in this case. This component requires that the two offenses contain common elements, or, in other words, for the offense to be a necessarily included offense, it must be such that the greater offense cannot be committed without committing the lesser. While petty theft is limited to those cases where the property taken is valued at less than $200, value is not a consideration in grand theft of livestock. Thus, the greater offense of grand theft of livestock can be committed without committing the lesser offense of petty theft. We conclude the trial court did not commit reversible error in denying appellant's requested jury instructions on petty theft and attempted petty theft.[2]

Appellant next contends the trial court erred when it denied appellant's motion for mistrial. The motion for mistrial was based on statements made by the prosecutor in his closing argument. We find no support for appellant's contention in the record.

■ Since we have nothing other than appellant's paraphrased summary of the statements to review, we cannot conclude a clear abuse of discretion took place here. Counsel for both parties waived the recording and transcribing of the closing argument, so we cannot independently assess the conduct of the prosecutor. Since appellant's motion for a mistrial was denied, we have no choice but to conclude the trial court's assessment immediately following the alleged misconduct was correct. This, coupled with counsel's failure to request a specific instruction regarding this alleged improper statement, *State v. Kidd,* 286 N.W.2d 120 (S.D.1979) (Henderson, J., concurring), leads us to conclude it was not reversible error for the trial court to deny the motion to dismiss.

Appellant contends the trial court erred in denying his motion for mistrial when the

---

2. Since the legal test has not been met, we find it unnecessary to review the factual test as set forth in *State v. Oien,* 302 N.W.2d 807 (S.D. 1981).

jury initially concluded it could not reach a unanimous decision. Appellant in effect argues that the trial court's instruction to "[p]lease continue your considerations of facts and law in an effort to arrive at a verdict" coerced the jury into reaching a unanimous decision. We cannot agree.

█ █ We believe the length of time a jury is to deliberate is within the wide latitude of discretion vested in the trial court. Error is only committed when the verdict is coerced by the trial court. *Karell v. West*, 616 S.W.2d 692 (Tex.Civ.App.1981) aff'd 628 S.W.2d 48 (Tex.1982). We do not find the trial court's charge to continue deliberating after the jury reported it could not reach a unanimous decision invaded the province of the jury, amounted to coercion, or denied the appellant a fair trial. The trial court's action did not rise to the type of coercion discussed in *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896) or in *State v. Ferguson*, 84 S.D. 605, 175 N.W.2d 57 (1970).[3]

Appellant contends the trial court erred in denying him the opportunity to call four witnesses to testify concerning the memory of one of the prosecution's rebuttal witnesses. We disagree.

The lot manager at the feedlot was called to testify on rebuttal regarding the August 30, 1980, conversation in which appellant indicated an interest in buying some calves. The lot manager testified that, contrary to appellant's statements, no authorization was given to purchase three calves for $190. Instead, the lot manager said he told appellant that any sales to appellant were contingent upon identifying the calves and getting a price. Appellant's counsel requested the opportunity to call four witnesses to testify as to the lot manager's capacity for remembering details. The request was denied. Appellant believes this testimony would have assisted the jury's determination as to the weight to accord to the lot manager's recollections.

█ Questions as to the relevance of proffered testimony, such as that available from appellant's witnesses, are committed to the discretion of the trial court and are not grounds for reversal or a new trial unless abuse is clearly demonstrated. *Weiby v. Wente*, 264 N.W.2d 624 (Minn.1978). Opinions of others as to the lot manager's memory were immaterial to the question of guilt or innocence of grand theft of livestock. Appellant had ample opportunity to cross-examine the lot manager's memory and additional testimony on the subject was not crucial to appellant's case. Thus, we reaffirm our view that the question of whether evidence is immaterial, conjectural or remote must be left to the practical judgment of the trial court and rests largely in its discretion. *Drier v. Perfection, Inc.*, 259 N.W.2d 496 (S.D.1977).

█ Finally, appellant contends there was insufficient evidence introduced at trial to support a verdict of guilty of grand theft. We recently stated that, in determining the sufficiency of the evidence on appeal, the Supreme Court is to examine whether there is evidence in the record which, if believed by the jury, is sufficient to establish a finding of guilt beyond a reasonable doubt. *State v. Gallegos*, 316 N.W.2d 634 (S.D.1982). Here, the record establishes that appellant sold Roberts five calves, which belonged to the feedlot, and kept the proceeds. The feedlot, on the other hand, did not receive any proceeds and was not even aware the transaction took place. The jury heard appellant's defenses that he did not intend to steal cattle; that he intended to pay for three head of the cattle out of his pay check; and that he decided to embezzle the $135 paid for the other two head of cattle. After due deliberation, the jury found defendant guilty of grand theft and there was sufficient evidence in the record to support this verdict.

We affirm.

---

3. We note appellant's assertion that the verdict was the result of fatigue, exhaustion and weariness of some of the jurors. We cannot accept this interpretation of the jury deliberations, however, since there is no credible evidence in the record to substantiate the allegations.

WOLLMAN, MORGAN and HENDERSON, JJ., concur.

FOSHEIM, C.J., dissents.

FOSHEIM, Chief Justice (dissenting).

The majority erroneously applies the third component of the legal test of a necessarily included offense. The opinion holds that the greater offense of grand theft of livestock can be committed without committing the lesser offense of petty theft. I disagree. In *State v. Faulk*, 22 S.D. 183, 116 N.W. 72, 74 (1908), we said:

> But it seems to be generally held under the law applicable to larceny in this class of cases, where the value of the property alleged to have been stolen is not material, proof of its value is not necessary, as courts and jurors will presume from the nature and character of the property proved to have been stolen that it had some value. (citations omitted)

It is obvious from the nature and character of the property that livestock has some value. Otherwise livestock stealing would unlikely be a felony. If the stolen livestock have a value—under two hundred dollars—then under the legal test the greater offense of grand theft cannot be committed without committing the lesser offense of petty theft which covers property of any value up to two hundred dollars. SDCL 22–30A–17.

The majority opinion therefore should reach the factual test. Since the factual test is not discussed, I withhold comment as to that component.