CAGE BROTHERS, ET AL, V. CHARLES D. WHITEMAN, ET AL.

No. 7916. Decided June 24, 1942.
Rehearing overruled July 22, 1942.
(163 S. W., 2d Series, 638.)

*Dan Moody* and *Herman Jones,* both of Austin, for plaintiffs in error.

It was error for the trial court to sustain plaintiff's plea in abatement to plaintiff's cross action against Bush (the landowner from whom both parties had leased the sand and gravel rights) seeking to make him a party to the suit. Maxwell v. Urban, 55 S. W. 1124; Skipwith v. Hurt, 94 Texas 322, 60 S. W. 423; John v. Hardin, 81 Texas 37, 40, 16 S. W. 624.

*Richey, Sheehy & Teeling,* and *Conway & Scharff,* all of Waco, for defendants in error.

Where the plaintiff Whiteman sues the defendant Cage Brothers for conversion only, alleging that he was the owner of said sand and gravel by virtue of a lease of said rights from Bush, the owner of the land, and that the defendants entered upon the land with full knowledge of his lease, and with such

MR. JUDGE TAYLOR delivered the opinion of the Commission of Appeals, Section B.

Charles D. Whiteman sued Cage Brothers and others not necessary to name, seeking to recover damages for conversion of sand and gravel on and under about thirty-two acres of land. Whiteman recovered $27,781.63 against the firm and its members, J. F. and Tom C. Cage, as the value of the processed gravel found by the jury to have been excavated and removed by them from the land. The judgment as to the other defendants was that plaintiff take nothing against them. The Court of Civil Appeals affirmed the judgment. See the opinion for a clear statement of the voluminous record of the case as viewed by that Court. 153 S. W. (2d) 727. The application of Cage Brothers for the writ was granted upon the first of its fifty-two assignments of error, which complains to the effect that T. F. Bush, the land owner, was not permitted to remain a party to the suit after Cage Brothers impleaded him by way of cross action. The pleadings raise either directly or by cross action of defendants all the questions necessary to be discussed. (All italics used herein, ours.)

Both Whiteman and Cage Brothers alleged as the respective bases of their asserted rights to the sand and gravel in question, written lease agreements from their common grantor, Bush. The respective agreements clearly disclose that the primary right concerning which the lessor and respective lessees contracted was that of excavating and marketing the sand and gravel in question, and that the other rights and obligations dealt with are incidental to the granting and securing of that right. The following language is used in both agreements to express the purpose of each: "* * * said property (the 32 acres of land owned by Bush) being leased *for the sole and only purpose of excavating, processing and marketing sand and gravel on or under said land.*"

Both lease agreements are in writing and cover the same land, the first being from Bush to Whiteman, executed March 16, 1937; the second, from Bush to Cage Brothers, executed January 3, 1938.

The Whiteman lease is set out in full in the opinion of the Court of Civil Appeals. Both leases contain the following stipulation:

"Lessee shall have the right of egress at all times and shall have the right to build all roads, railroads, pipelines, erect buildings and machinery and make any other improvement necessary for the proper handling of the sand and gravel to be removed under this lease. He shall have the further right to remove any such improvements, whether permanent or temporary on the termination of this lease, * * *."

Both leases provide in identical language a right on the part of the lessee to terminate the agreement upon sixty days written notice to the lessor, and that lessor shall have a lien on all equipment located on the land to secure payment of royalties, with the consequent right to prevent removal until such payments are made.

The term of the lease from Bush to Whiteman is "for a period of one year *and as long thereafter as the terms of the lease are complied with* "by Whiteman." The terms of the Cage Brothers lease is *the duration of a federal aid project therein described for constructing about fourteen miles of highway.* It contains a provision in this connection not found in Whiteman's lease, to the effect that Cage Brothers agreed that Bush reserved the right to sell sand or gravel to others from the land, provided any material sold or removed by him should not be used on the federal project and that its removal should not interfere with lessees' operations. In other words Cage Brothers' right to excavate and remove gravel from the land ceased upon completion of the highway project. Whiteman was unconditionally privileged under the terms of his contract to remove all the gravel and sand from the land provided he fulfilled the obligations incumbent upon him, while Cage Brothers enjoyed that privilege upon condition all of the material was necessary to the completion of the federal project referred to and Bush did not exercise his option to dispose of a part of it before the project was finished. This difference is unimportant here, however, as Whiteman sued only for damages for conversion of the

sand and gravel mined and removed from the land in wilful disregard of his ownership of the sand and gravel in place. According to Whiteman's allegations boiled down, and the findings of the jury, Cage Brothers did not take the sand and gravel under a good faith claim of right, but went upon the land with actual knowledge, and charged with knowledge, of his right to excavate and market it, and in wilful disregard of such right, converted his sand and gravel on and under the land as naked trespassers.

■ We are in accord with the holding of the Court of Civil Appeals that the alleged ownership by Whiteman of the sand and gravel in place did not necessitate that he sue in trespass to try title and for damages. Under the facts as pleaded by both lessees the title of the land was not the paramount issue between them. Neither sought recovery of title of any character from the other, nor from Bush. Both lessees recognized Bush as the owner of the land prior to the execution of Whiteman's lease. If the parties were contesting here the question as to who should recover possession of the land, or an interest therein, a different question would be presented. The only issue upon which that right has bearing in the present suit is whether Cage Brothers' possession of the land and their entry thereupon was wrongful and in wilful disregard of Whiteman's right to mine and market the sand and gravel on and under the land. Cage Brothers admit that Whiteman's lease, if it had not been forfeited at the time of their entry upon the land, was sufficient to invest him with an interest in the land; but contend it was not sufficient to convey to him the sand and gravel in place. We agree with the Court of Civil Appeals that under the holding in Stephens County v. Mid-Kansas Oil & Gas Co., 113 Texas 160, 254 S. W. 290, 29 A. L. R. 566, the Whiteman lease vested in him a determinable fee to the sand and gravel on and under the land. Since this holding is sound with respect to the fugitive mineral there involved (oil) there can be no question as to its soundness as applied to the present case which involves solid minerals, such as sand and gravel.

■ Cage Brothers contend, however, that under the law of this State Whiteman had an exclusive statutory remedy to try title, and that a suit for conversion cannot be made the means of litigating title to an interest in land. We need not discuss the contentions stated, since Whiteman did not elect to sue in trespass to try title and for damages. We agree with the Court of Civil Appeals that he was not relegated solely to such right

for relief, but was entitled to sue, as he did, to recover the value of the sand and gravel alleged to have been mined from the land and converted by defendants wilfully. It is pointed out in 42 Tex. Jur. p. 515, sec. 9, that while trover does not lie for the conversion of property while it is a part of the realty, "an action can be maintained for an unauthorized severance or removal from the land of crops, timber, sand and oil," citing as authority for the rule with respect to the removal of sand, Texas & N. O. Ry. Co. v. White, 25 Texas Civ. App. 278, 62 S. W. 133. It is pointed out also (18 Amer. Jur. pp. 10 to 12, secs. 5 and 6) that since the introduction of the action of ejectment into this country as a part of the common law it has undergone material change; that in this State the statutory cause of trespass to try title has displaced the common law action of ejectment and *is used principally as a method of vesting and divesting title to real estate * * *,"* citing Stanley v. Schwalby, 162 U. S. 255, 40 L. ed. 960, 16 Sup. Ct. 255, and referring to 41 Tex. Jur. pp. 456 et seq; and further pointing out that the tendency is to eliminate technicalities and afford substantial justice to litigants by the most simple and direct means. Corpus Juris (Vol. 64, p. 24) says:

"Earth, sand, and gravel while remaining in its original bed is a part of the realty and as such cannot be a subject of conversion; but where it has been wrongfully severed and removed, it becomes personalty for the conversion of which an action will lie."

It is stated in Bender v. Brooks, 103 Texas 329, 335, 127 S. W. 168, Amer. Cas. 1913 A, 559, that "there is no conflict in the authorities upon the proposition that the minerals in the land continue to be the property of the land owner after it was removed from its bed or place in the soil."

The authorities cited by the Court of Civil Appeals, in keeping with the law stated, abundantly support the right of Whiteman to pursue the remedy chosen. See in this connection Pittsburgh & W. Va. Gas Co. v. Pentress Gas Co., 84 W. Va. 499, 100 S. E. 296, 7 A. L. R. p. 901 and anno. p. 922, stating rule in United States; also Barnes v. Winona Oil Co., 83 Okla. 253, 200 Pac. 985, 23 A. L. R. 189 and anno. pp. 193-4, which states the holding in Kelvin Lumber & Supply Co. p. Cooper State Mining Co. (Texas Civ App.), 232 S. W. 858. See also same case (Com. App.) 227 S. W. 938.

We agree also with the rule applied by the Court of Civil Appeals in measuring the damages to which the owner of sand and gravel in place is entitled upon its removal by a wilful trespasser. The following extract from the recent discussion (36 Amer. Jur. p. 444) of the measure of damages for the Wrongful Extraction and Removal of Minerals," is a recent general statement of the law on the subject:

" * * * the measure of recovery, *in the absence at least of a showing that the act was done wilfully*, should be compensation for the loss suffered. But although the courts agree that the awarding of such compensation should be the aim of the law, they have differed on the question as to what constitutes actual loss, as well as the method of ascertaining it. *Much of the conflict has grown out of the forms of action at common law* and the difficulty of confining the recovery to mere compensation, when the principle upon which the form of action was supposed to rest allowed a larger recovery. Later decisions have tended to ignore the form of action in measuring the damages. * * * *When the wrongdoer commits the trespass willfully and with the knowledge that he is invading the rights of another, or under such circumstances as to charge him with knowledge of the character of his act, a different rule obtains*. In such case, the measure of damages is the value of the things mined at the time of severance without making deduction for the cost of labor and other expenses incurred in committing the wrongful act, * * * incurred, or for any value he may have added to the mineral by his labor. Although the value of the mineral may be increased by mining and severing it or thereafter removing it to the surface, the owner is entitled to its full value in the severed condition, *and the trespasser can take no advantage of his labor or expense.*"

It is further stated in Bender v. Brooks that "if Brooks had been an intentional trespasser in removing the oil, there would be no complications, for he would be responsible for its value without compensation to him for his labor or money expended in producing it."

The above statements are in keeping with the law as applied in the cases cited by the Court of Civil Appeals upon the subject. It should be stated in this connection that Dreeben v. Whitehurst, 68 S. W. (2d) 1025, cited by the Court of Civil Appeals involved a lease agreement the principal effect of which was, as in the lease from Bush to Cage Brothers, "con-

ditionally to license the county to go upon the land and, within a reasonable time, remove therefrom a limited quantity of gravel * * *." It did not operate to vest the county with title to the gravel in place.

■ We are not in accord, however, with the holding of the Court of Civil Appeals that the trial court did not err in dismissing Cage Brothers' cross action against Bush, and in holding that such action, even if error, was harmless so far as Whiteman's cause of action is concerned.

We have heretofore pointed out that Whiteman's cause of action was for damages for wilful conversion of the sand and gravel by Cage Brothers. His pleadings so limit his cause of action. Unless they wilfully went upon the land in disregard of Whiteman's lease, the nature of which they were charged with knowledge of, he had no cause of action against them. Whiteman's lease was on record at that time. It contained the following forfeiture provision:

"Failure on the part of lessee to pay any annual installment of $600.00 advance royalty in advance by the 11th day of May of each year that this contract is in force or failure on the part of the lessee to pay any other royalties due hereunder within ten days from the due date of same, shall at the option of the lessor forthwith terminate this lease and all rights of the lessee hereunder."

■ Cage Brothers undertook to make Bush a party by way of cross action, alleging that every act of theirs of which Whiteman complained was committed by them in reliance upon oral representations made by Bush to them to the effect he owned the land involved and had the unencumbered right to execute an agreement granting to them the exclusive right to go upon the land and remove sand and gravel therefrom. It is unquestioned that Bush did execute and deliver to them a contract granting a limited right to remove the sand and gravel until the completion of the federal highway project. The present record discloses that both Bush and the representative of Cage Brothers testified that he made the representations alleged. Whether Bush had the right claimed by him depended upon whether, prior to the execution of the agreement with Cage Brothers by Bush, Whiteman's lease agreement had been forfeited. This was, under the facts of the present record, a

question of law, to be decided upon a determination of the conflicting facts bearing upon the question. It is undisputed that Cage Brothers chose to believe and act upon the representations of Bush that the Whiteman lease was terminated. As pointed out in the opinion of the Court of Civil Appeals Cage Brothers chose not to avail themselves of the orderly processes of the law, but substituted themselves along with Bush as arbiters of the law and facts and entered upon the land and removed therefrom the sand and gravel for the conversion of which, wilfully, Whiteman sued. The sole issue between Whiteman and Cage Brothers is whether they, as Whiteman alleged, wilfully converted the gravel and sand removed by them from the land. If Whiteman's lease agreement had in fact been forfeited, as claimed by Cage Brothers, then they were in the clear. Whiteman's right to the sand and gravel in such event, had terminated. Bush may have believed it was forfeited. *Whether it was or not could not be determined finally as an established fact in the absence of Bush as a party to the suit.* Nixon v. Cowan, 134 Texas 262, 135 S. W. (2d) 96. While the case cited grew out of an oil lease controversy it is not distinguishable from the present case with respect to the question of necessary parties, upon which the case turned.

The reason supporting the holding is obvious. Suppose it should be determined in a subsequent suit between Cage Brothers and Bush that Whiteman's lease was not forfeited. The question of forfeiture vel non would be undetermined finally. We cannot in the light of the clear cut controversy between Whitman and Cage Brothers assume that it has been finally established they were wilful trespassers upon Whiteman's lease, and upon such assumption of wrong doing close their mouths to defend under their general denial upon the ground set up in the cross action. The issue could not rightly be adjudicated in favor of Whiteman and against Cage Brothers in a suit to which Bush was not a party, and in a subsequent suit to which he was a party be differently determined. If the Whiteman lease had not in fact been forfeited then Cage Brothers had with their eyes open incurred the penalty in damages meted by law to wilful trespassers. They acted upon the assumption Whiteman's rights had terminated, upon Bush's representations to that effect, and were within their rights in so acting. They merely incurred the risk of being cast in damages under the rule stated above. They were not in the role of wrongdoers in going upon the land unless in fact Bush had no grounds upon which to exercise his option to forfeit as provided in the lease.

This fact Cage Brothers were entitled to have adjudicated so as to be binding against everybody, including Bush. In other words they were entitled as a matter of right to an adjudication of the question, final in its nature.

The determination of this issue was not only the basis upon which the rights of Cage Brothers are to be determined as between them and Bush, but is the basis upon which Whiteman's alleged cause of action is predicated. It is no answer on the part of Whiteman to say, as does the Court of Civil Appeals, that "defendant's cross action was not pleaded as a defense to plaintiff's cause of action." The issue of wilful conversion was raised by Cage Brothers' general denial of liability to plaintiff. The determination of that issue finally (that is, with Bush as a party to the suit) in favor of Cage Brothers would determine the entire controversy. Its determination in favor of Whiteman would fix the measure of his recovery against Cage Brothers under the rule stated above, and would constitute the basis upon which their rights could be determined against Bush. To proceed without Bush as a party to the suit was tantamount to assuming Cage Brothers had no defense against Whiteman, under their general denial. The fact of forfeiture pleaded as a basis of the cross action against Bush constitutes likewise a complete defense to Whiteman's alleged cause of action when established. The Court of Civil Appeals was therefore in error in sustaining the plea to abate the cross action, thus holding in effect that Bush was not a necessary party to the suit of Whiteman against Cage Brothers.

The case must therefore be remanded for trial for an adjudication of the defense of forfeiture and such other issues as may arise upon its determination. In event of an adjudication of this issue in favor of Cage Brothers the controversy will be ended as to all parties. In event of its adjudication in favor of Whiteman he will be entitled to recover his damages for conversion under the rule stated above. We therefore overrule Whiteman's contention that the only controversy necessary to be adjudicated in this suit was between him and Cage Brothers, and hold that it is not only proper, but necessary as well, in order to fairly determine the rights of all parties at interest, that Whiteman's controversy with Cage Brothers be adjudicated along with the cross action which was erroneously abated.

In view of the fact that the final pleadings as between Cage Brothers and Bush are not before us nothing need be said as to the issues that may arise between them. In view of the holdings as to the nature of Whiteman's alleged cause of action and his right to maintain it, it is unnecessary to discuss any of the other assignments further than to say we are in accord with the holding of the Court of Civil Appeals with respect to the effect of the contract between Whiteman and Potts-Moore Gravel Company upon the controversy between Whiteman and Cage Brothers.

The judgment of the Court of Civil Appeals affirming that of the trial court is reversed and, together with that of the trial court, set aside, and the cause is remanded for trial in accord with the holdings stated.

Opinion adopted by the Supreme Court June 24, 1942.

Rehearing overruled July 22, 1942.