H. D. OGLE, Petitioner,

v.

Charlotte CRAIG et al., Respondents.

No. B–2345.

Supreme Court of Texas.

Jan. 20, 1971.

On Rehearing Feb. 10, 1971.

Morehead, Sharp, Tisdel & Gibbins, John F. Morehead, Plainview, for petitioner.

LaFont, Tudor, Tunnell, Formby & Reep, Bill LaFont, Cox & Hurt, Steve Hurt, Plainview, for respondents.

STEAKLEY, Justice.

This is a suit for an alleged conversion. It was brought by Charlotte Craig, respondent, against her father, H. D. Ogle, petitioner. Ogle brought a third party action against Jessie Pearl Ogle, also a respondent, his wife at the time of the alleged conversion, since divorced. Charlotte was given judgment for $4,724.64 actual damages and $1,274.38 exemplary damages; Jessie Pearl was held secondarily liable to the extent of the Ogle community property and was granted indemnity against Ogle. The judgment was affirmed by the court of civil appeals. Tex.Civ.App., 456 S.W.2d 778. We reverse and remand.

Charlotte's suit filed in July 1968 alleged that she was the owner of 1,737 bushels of soybeans which Ogle converted to his own use and benefit to her damage in the sum of $4,724.64; and that Ogle's conduct was willful and wanton and constituted gross negligence. Ogle denied the allegations and filed a cross action against Charlotte, Jessie Pearl Ogle and Curtis Spearman, the then husband of Charlotte. As against Jessie Pearl, Ogle alleged that he and she were community partners in a farming operation with Charlotte, their daughter, and her first husband, Weldon Craig, until his death, which partnership was terminated in the fall of 1966 with a settlement of accounts; or, if not, that a full accounting should now be had; that any amount he owed Charlotte would be a community debt, one-half of which would be owed by Jessie Pearl.

Upon trial, the jury found that on or about December 7, 1966, all accounts of the Craig and Ogle partnership were settled except the 1966 soybean crop in question (Issues 1 and 2); that Ogle converted soybeans owned by Charlotte of a reasonable cash value of $4,724.64 (Issues 3 and 4) and that Charlotte should recover exemplary damages of $1,274.38 (Issue 5). The trial court gave Charlotte judgment against Ogle in the total amount of actual and exemplary damages as found by the jury; decreed that Jessie Pearl was secondarily liable therefor to the extent of the community property of her marriage to Ogle but that Jessie Pearl have indemnity from Ogle for any sums she may be required to pay under the terms of the judgment.

Ogle appealed to the court of civil appeals upon points asserting (1) that there was no evidence of a conversion by him of soybeans owned individually by Charlotte; (2) that the court's charge on exemplary damages was reversibly erroneous; (3) that the judgment of Jessie Pearl over and against Ogle was without support in the pleadings; (4) and that Ogle should have been given six peremptory jury challenges instead of three. All points were

overruled by the intermediate court and are brought here. We do not consider the last point in view of the remand of the cause; the pleadings and issues of fact may not be the same upon retrial. See Tamburello v. Welch, 392 S.W.2d 114 (Tex.Sup.1965).

■ We granted writ of error for the principal purpose of reviewing the instruction to the jury which authorized the assessment of punitive damages for a wrongful act. It should be stated initially, however, that we agree with the courts below that there was evidence of probative force supporting the jury finding of a conversion. It is undisputed that Charlotte and her former husband, Weldon Craig, and she alone after his death, were partners with Ogle in a farming enterprise during the year 1966, and for the preceding years of 1964 and 1965. The jury found that all accounts of the partnership were settled on or about December 7, 1966, "except the 1966 Craig and Ogle soybean crop" and it was Charlotte's portion of this crop which she charged Ogle with converting. The testimony of the parties with respect to the soybean crop in question is inconclusive in some respects as emphasized by Ogle in urging his no evidence points, but we concur in the findings of the intermediate court that there is evidence of a division of the crop, and that Ogle took possession and disposed of the portion belonging to Charlotte. This is shown in the testimony of the witnesses and the reasonable inferences which may be drawn therefrom. For example, Ogle testified that he and Charlotte "agreed to leave her half of the beans out in the field"; an employee of Ogle testified that the beans were loaded in a truck belonging to Ogle; Charlotte testified to repeated requests of her father to pay to her her part of the proceeds from the soybean crop in question.

■ The exemplary damage instruction of the trial court was in these terms:

"You are instructed that before you can assess exemplary damages, you must find from a preponderance of the evidence that in converting the soybeans in question, if you have so found they were converted, Defendant, H. D. Ogle acted in bad faith under circumstances showing improper motive.

"You are further instructed that punitive damages may be assessed as punishment for a wrongful act done, if any * * *."

Under this instruction the jury in assessing exemplary damages was only required to find that Ogle acted in bad faith under circumstances showing improper motive *or* that he engaged in a wrongful act. This is not conduct which will support the assessment of exemplary damages under the circumstances here shown. The applicable rule was stated by this Court in Jones v. Ross, 141 Tex. 415, 173 S.W.2d 1022 (1943), restated in Ware v. Paxton, Tex., 359 S.W.2d 897 (1962), and again in Dennis v. Dial Finance & Thrift Company, Tex., 401 S.W.2d 803 (1966):

"The fact that an act is unlawful is not of itself ground for an award of exemplary or punitive damages. The act complained of not only must be unlawful but also must partake of a wanton and malicious nature, or, as sometimes stated, somewhat of a criminal or wanton nature, and an act will not be deemed malicious, and so warranting punitive damages, merely because it is unlawful or wrongful."

Charlotte does not notice these holdings in defending the instruction under review. She argues that the parties were in a confidential relation which was breached by Ogle under circumstances showing bad faith and that this is a sufficient ground for assessing punitive damages since, she says, bad faith amounts to "fraud and/or malice." She cites a number of opinions of our intermediate courts having no writ history, together with Connor v. Sewell, 90 Tex. 275, 38 S.W. 35, and Clements v. Withers, Tex., 437 S.W.2d 818 (1969), by this Court.

The early view of this Court is exemplified in *Connor* where Chief Justice Gaines wrote:

"To authorize a judgment for punitory damages, the case must contain some element of fraud, malice, or oppression. The act which constitutes the cause of action must be actuated by or accompanied with some evil intent, or must be the result of such gross negligence—such disregard of another's right—as is deemed equivalent to such intent. * * * The trespass in this case is alleged to be forcible and unlawful, but that may be technically said of most trespasses."

We would add in the same thought that acts violative of the rights of another may be said to be wrongful and, indeed, may be motivated by bad faith and improper motive. But there must be more to support legal redress to the extent of the punishment implicit in the assessment of punitive damages.

With the emphasis indicated, Charlotte argues that Clements v. Withers, supra, approved an instruction that conduct which is "willful, *wrongful* or wanton" will justify an award of exemplary damages, as well as holding that malice may not be necessary where the acts are accompanied by fraud or *other aggravating circumstances*. We did not hold in *Clements* that an instruction in terms of a wrongful act is sufficient to support an award of exemplary damages. This was not the problem before us. The objection to the charge was limited to the language "willful or wanton," which was said to be erroneous because the words should have been "malicious or wanton." Nor did we say more than that actual malice in the sense of "ill-will, spite, evil motive, or purposing the injuring of another" may not be necessary in situations not relevant here. This is an unfortunate controversy between a father and daughter who were cast into a business partnership by the untimely death of the son-in-law. The father is accountable, of course, for the conversion of property belonging to the daughter as found by the jury; but to justify an award of punishment damages, there must be more than a wrongful act and the instruction was erroneous in such respect.

It is to be expected that Jessie Pearl Ogle, the impleaded third party, will plead for indemnity against Ogle upon another trial, and the error claimed by Ogle in the decreeing of indemnity against him without support in her pleadings will not recur. It is to be noted, however, that Ogle in his third party action against Jessie Pearl sought alternative relief in the nature of a judgment "stating the partnership accounts and the rights and liabilities of each of the parties to this cross action." The decree of the trial court did just this and it may very well be said that the indemnity decree was properly founded on the pleadings of Ogle.

The judgments below are reversed and the cause is remanded to the trial court.

DENTON, J., not sitting.

## ON MOTION FOR REHEARING

STEAKLEY, Justice.

In her motion for rehearing, Charlotte Craig requests that she be allowed to remit the portion of the judgment awarding exemplary damages, and interest thereon, and prays that the judgment of the trial court be reformed so as to eliminate this recovery and, as so reformed, be affirmed. The motion has not been resisted by any of the parties.

The motion for rehearing is granted. See Texas Employers' Ins. Ass'n. v. Lightfoot, 139 Tex. 304, 162 S.W.2d 929 (1942). Judgment is now entered as follows:

(a) The judgment heretofore entered by this Court is set aside.

(b) The judgment of the court of civil appeals is reversed.

(c) The judgment of the trial court is modified so as to award Charlotte Craig a recovery against H. D. Ogle for actual damages in the amount of $4,724.64, with interest thereon at the rate of 6% per annum from January 1, 1967, and as so modified, the judgment of the trial court is affirmed.

(d) The costs are apportioned three-fourths to be paid by petitioner, H. D. Ogle, and one-fourth to be paid by Charlotte Craig.

DENTON, J., not sitting.