**Dorothea F. KARELL, et vir., Appellant,**

v.

**Rena WEST and Bob Shobert, Appellee.**

**No. 18410.**

Court of Civil Appeals of Texas, Fort Worth.

May 14, 1981.

Rehearing Denied June 11, 1981.

Callaway & Marshall and Clyde Marshall, Jr., Fort Worth, for appellant.

Frank D. McCown and John McLain, Fort Worth, for appellee.

## OPINION

PER CURIAM.

Rena West and Bob Shobert filed suit in trespass to try title to a portion of a 3.783 acre tract of land and for damages for removal of sand and topsoil therefrom against Dorothea Karell and her husband, George Karell. The Karells answered by pleas of not guilty and general denial and by special plea of title by ten years adverse possession. After a trial before a jury a judgment was rendered for the plaintiffs, from which the Karells have appealed.

We reform and affirm the judgment of the trial court.

In 1958, by virtue of a warranty deed coupled with a guardian's deed, Mrs. Karell purchased, as her separate property, 18.917 acres of land in Tarrant County. Immediately to the west of this tract there is a 3.783 acre tract. In 1967 a corporation wholly owned by the plaintiffs purchased the 3.783 acres from Charles Raymond Lott and Mary Virginia Lott Reese. The plaintiffs thereafter purchased the acreage from the corporation.

At the time Mrs. Karell purchased the 18.917 acres a fence which enclosed the 18.917 acre tract also enclosed a portion of the 3.783 acre tract leaving only a small triangular portion of the 3.783 acre tract

unenclosed. The enclosed portion of the 3.783 acre tract is in dispute here.

The Karells rented the property in dispute to tenants from 1958 until 1972. In 1970 the Karells contracted with Wayne (Curly) Howl for the sale and removal by Howl of sand and topsoil from the land enclosed within the described fence. The written contract stated that the Karells owned the 3.783 acre tract adjoining the 18.917 acre tract.

The plaintiffs became concerned in 1972 after noticing that sand and topsoil were being removed from the 3.783 acre tract. The plaintiffs approached Mr. Karell in regard to their ownership of the enclosed portion of the 3.783 acres of land and thereafter filed suit in November 1972. Following the trial and verdict the trial court rendered judgment that the plaintiffs recover title and possession of the disputed tract and that the plaintiffs also recover $14,400.00 as damages for the removal by the Karells of sand and topsoil from the acreage.

The Karells' tenth point of error asserts that the trial court's judgment is erroneous because the plaintiffs failed to prove an unbroken chain of title to such property from the sovereignty of the soil which is a necessary prerequisite to their recovery in this trespass to try title action.

The plaintiffs' success depends on the strength of the title they can prove. Such proof can be accomplished by (1) proving a regular chain of title emanating from the sovereign (2) proving a superior title out of a common source, (3) proving title by limitations, or (4) proving prior possession and that the possession has not been abandoned. *Land v. Turner*, 377 S.W.2d 181, 183 (Tex.1964); *Mitchell v. Mesa Petroleum Company*, 594 S.W.2d 507, 509 (Tex.Civ. App.—San Antonio 1979, writ ref'd n. r. e.).

The plaintiffs' evidence consisted of several deeds evidencing chains of conveyancy in regard to two tracts of land, portions of which constitute the tract in dispute. As successors to these chains of conveyancy plaintiffs rely upon the purported limitation title ripened by their predecessors in conveyancy to prove superior title in themselves.

Plaintiffs introduced an affidavit of adverse possession filed and sworn to by Jim S. Tomlin on April 24, 1928 which states that the plaintiffs' predecessor in title Z. T. Slaughter, had adversely possessed certain acreage for more than 20 years without disturbance.

The plaintiffs also introduced testimony to the effect that the Lott family, predecessors in the plaintiffs' chain of conveyancy, had continuously occupied the property for ten years (from 1933 to 1943) without interference.

We hold the evidence adduced at trial was sufficient to establish a derivative limitation title in the plaintiffs. The limitation title created in the plaintiffs' predecessor in conveyancy constitutes a chain of title from the sovereignty of the soil for purposes of this trespass to try title action. *Brohlin v. McMinn*, 161 Tex. 319, 341 S.W.2d 420, 422 (1960). We overrule the Karells' tenth point of error.

The Karells' first point of error complains of the trial court's rendering judgment awarding title and possession of the property in issue to the plaintiffs based on the jury's answer to special issue no. 1. Special issue no. 1 inquired of the jury as to whether the Karells had held exclusive, peaceable and adverse possession of the property in issue for any continuous period of ten years or longer.

The Karells also claim that the trial court erred in overruling their motion for judgment notwithstanding the verdict because there is no evidence to support the judgment or alternatively the same are so contrary to the overwhelming weight and preponderance of the evidence to be unjust.

In weighing the evidence supporting the verdict along with the other evidence in the case, including that which is contrary to the verdict, we hold that the trial court did not err. See: *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

It is undisputed that the property in issue was enclosed by a fence. Such enclosure gives rise to a rebuttable presumption that an adverse claim is being made by the party in possession. *McKee v. Stewart,* 139 Tex. 260, 162 S.W.2d 948 (1942). This presumption is somewhat diluted here, however, due to the fact that the fence was standing at the time the Karells purchased the 18.917 acre tract of land and was not designedly erected by them.

In any event, in order for the Karells to establish a limitation title they are required to prove continuous cultivation, use, or enjoyment of the land as well as possession and adverse claim. *McKee v. Stewart, supra,* 162 S.W.2d at 953; *Vaughn v. Anderson,* 495 S.W.2d 327 (Tex.Civ.App. —Texarkana 1973, writ ref'd n. r. e.).

It is uncontroverted that the Karells never lived on the disputed acreage nor did they personally use or cultivate it. Any claim of limitation title made by them is through the tenants by whom the property was supposedly occupied. Both Mr. and Mrs. Karell testified as to a succession of tenants from 1958 through 1972. (The tenants actually occupied a house located on the 18.917 acre tract.) Neither could testify that for a continuous ten year period each tenant used the disputed tract by cultivating crops, grazing livestock or by using the land in any manner so as to put the true owners on notice that an adverse claim of ownership of the property in issue was being made. Their testimony also shows that periods of non-occupancy would sometimes last as long as two months.

The plaintiffs produced witnesses who testified that not all of the tenants had livestock or crops. In fact, one witness testified that other than one tenant named Davis, who occupied the premises for 2 or 3 years, no other tenant had livestock. (Mr. Karell himself testified that the disputed acreage was suitable for cows.) Other than one witness' testimony that one tenant grew a garden near the house located on the 18.917 acre tract there is no evidence that the disputed tract was used to raise crops. Several witnesses testified that at many times the property appeared to be vacant.

We overrule the Karells' first point of error. The use to which the Karells put the land did not constitute an actual and visible appropriation of the land which was continuous and unbroken. *Vaughn v. Anderson, supra* at 332.

The Karells' second and third points of error relate to the trial court's failure to give the jury an explanatory instruction on property used for rental purposes and temporary vacancies thereof. The first such asserted error was committed when the trial court refused to submit such instruction in conjunction with special issue no. 1. because, the Karells argue, the evidence showed without dispute that their claim of ten years adverse possession of the property in issue was based on usage and enjoyment of the property for rental purposes through tenants, entitling them to such instruction as a matter of both right and equity. The second such asserted error occurred when during deliberation the jury asked for clarification of what the law meant by "usage" and "enjoyment" and the trial court replied by instructing them that these words were to be given their common meaning.

We agree with the Karells' contentions that a tenant's possession supports a claim of limitation title under the ten year statute and that temporary vacancies for periods reasonable in length between changes of tenants will not stop the running of the statute of limitations. However, the trial court has considerable discretion in determining what explanatory instructions and definitions shall be proper to enable the jury to pass on and render a verdict on the special issues. Tex.R.Civ.P. 277. The terms "usage" and "enjoyment", especially when considered in the context of the other definitions given ("adverse possession" etc.), had no particular legal significance requiring definition or explanation for the jury. We overrule the Karells' second and third points of error.

The Karells' fourth point of error asserts that the submission of special issue

no. 2, which inquired of the jury whether the Karells knew that the disputed acreage was not part of their deed to the 18.917 when they began selling sand and topsoil, was error because it was not an ultimate issue and its submission conditioned on a negative answer to special issue no. 1 was a comment on the weight of the evidence implying, contrary to law, that if the Karells possessed such knowledge it would preclude their recovery of title by ten years adverse possession. This error, the Karells argue, denied them a fair and impartial trial constituting fundamental error.

In *Dahlstrom Corporation v. Martin*, 582 S.W.2d 159, 161 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n. r. e.) certain landowners brought an action against a dirt supply company for wrongful excavation of dirt. In discussing the measure of damages to be applied the court stated:

"One who wilfully or in bad faith trespasses on the land of another and removes minerals is liable to the owner for their full value computed as of the time the trespasser converted them to his own use, or otherwise stated, the trespasser is liable for the enhanced value of the product when and where it is finally converted, without any deduction for expenses incurred, or for any value he may have added to the mineral by his labor." Citing *Cage Bros. v. Whiteman*, 139 Tex. 522, 163 S.W.2d 638 (1942).

We overrule the Karells' fourth point of error on the ground that special issue no. 2 is relevant to the cause of action for the conversion of sand and topsoil which was joined to the plaintiffs' cause of action for trespass to try title.

■ The Karells' fifth point of error related to the submission of special issue no. 3 which asked the jury whether the Karells sold the sand and topsoil from the disputed tract in conscious or reckless disregard of the rights and interests of the true owners. The jury answered affirmatively. The Karells attack the submission on several bases, two of which (not an ultimate issue and comment on the weight of the evidence) have already been discussed under the Karells' fourth point of error.

The Karells' other two grounds of attack are that (1) there was no probative evidence to support its submission or the jury's answer to it, or alternatively (2) such answer is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust.

The gist of the Karells' argument under their fifth point of error appears to be that by allowing the Karells to maintain the fence around the disputed acreage the plaintiffs conclusively acquiesced to the existence of dominion and control by the Karells.

The record reveals, however, that before the plaintiffs discovered the removal of sand and topsoil from the disputed acreage they had paid several visits to the site. Their testimony is that they did not see any indication (people, crops or livestock) that an adverse claim to the property was being made. (This testimony, as discussed in relation to the first point of error, as to the absence of visible appropriation, was corroborated by other testimony.) Upon discovering the removal of sand and topsoil, it was testified, the plaintiffs confronted Mr. Karell. There is evidence that as early as 1961 the Karells had knowledge that the disputed tract was not included within the deed to the 18.917 acres.

The evidence supports the submission of special issue no. 3 and the jury's answer thereto. At oral submission the Karells argued that the question is really one of whether the Karells believed in good faith that a limitation title had been perfected. We disagree. A claim of adverse possession is inherently one in disregard of the rights of the actual owner. One asserting adverse possession acts that his limitation title has not been perfected. We overrule the Karells' fifth point of error.

■ The Karells' sixth point of error complains that the jury's finding in response to special issue no. 4 that 18,000 cubic yards of sand and topsoil had been sold from the disputed acreage is supported by no probative evidence or alternatively,

the answer is so contrary to the overwhelming weight and preponderance of the evidence as to be manifestly unjust. The position in their sixth point of error is founded on the assertions made in their seventh point of error wherein they contend that the trial court erred in overruling their objection to the admission in evidence of one of the plaintiffs' exhibits. The grounds for error are that the elevation differentials used in the exhibit by the expert J. R. Dunaway, in estimating the amount of soil excavated, were: based on mere guesses; unqualified as expert opinions for aid of the jury; and prejudicial to the rights of the Karells to a fair trial.

J. R. Dunaway testified that: he was a registered public surveyor and that in 1966 he had done a survey on the disputed tract but had done no elevations at that time; he returned to the property in 1972 and prepared a map showing the elevations on the property; in preparing the map a grid system was set up to find the difference in elevations—an *estimate* of the ground level as of 1966 was made and the difference in level from that in 1972 was used in computing the estimated excavation; the calculations as to the estimated previous elevations were done in the confines of accepted engineering practice; the estimate was the best estimate that could be obtained; and the estimate was probably conservative. His opinion was that 29,396 cubic yards of sand and material had been removed.

The exhibit prepared by J. R. Dunaway was introduced solely as an aid to the jury on the matter as to how much sand and topsoil had been excavated. It was made abundantly clear that the figures recited were based on estimates. It appears that estimates were the best evidence available. (The person who purchased the sand and topsoil was able to do no more than *estimate* the amount of material which had been extracted to be between 10 and 12 thousand cubic yards.) Under these circumstances the fact that estimates were relied upon in arriving at the figures presented in the exhibit went to the weight of the evidence rather than its admissibility. We overrule the Karells' sixth and seventh points of error.

The Karells' eighth point of error refers to that part of the judgment which awarded the plaintiffs a money judgment based on a valuation of $.80 per cubic yard of sand and topsoil removed. The jury found that $.40 per cubic yard was the value of the sand and topsoil in place and $.80 was the value of the sand and topsoil after it was mined and loaded into trucks. The $.80 per cubic yard valuation is supported by the testimony of the person who contracted to purchase and remove the sand and topsoil. The jury found that 18,000 cubic yards of sand and topsoil had been removed. The trial court awarded damages of $14,400.00 (18,000 times $.80) for the removal of material.

The plaintiffs' first amended original petition pled that the sand and topsoil had a valuation of $.50 per cubic yard.

On the basis of the jury's finding that the Karells sold the sand and topsoil from the disputed tract in "conscious and reckless disregard of the rights and interests of the owners" the trial court would have been justified in rendering judgment based on an enhanced valuation of $.80 per cubic yard were it not for the fact that the plaintiffs' pleading limited the prescription of valuation to $.50 per cubic yard. See: *Federal Underwriters Exchange v. Popnoe*, 140 S.W.2d 484, 489 (Tex.Civ.App.—El Paso 1940, writ dism'd by agr.).

The Karells also complain that the trial court's award of damages in excess of $.40 per cubic yard constituted an award of exemplary damages in conflict with the jury's finding that no exemplary damages should be awarded.

Enhanced recoveries and exemplary damages should not be equated. Enhanced recoveries are the result of a measurement used in determining *actual* damages when a trespasser's actions are not in good faith. Enhanced recoveries do not afford the tortfeasor a return of the expenses incurred in enhancing the product.

Exemplary damages, on the other hand, are meant to punish the tortfeasor *only after actual damages have been awarded.*

We sustain the Karells' eighth point of error to the extent the award of the trial court exceeds the valuation rate pled.

The Karells' ninth point of error contends that the trial court erred in sending the jury back for further deliberation late on Friday afternoon after the foreman reported that they were hopelessly deadlocked nine to three, failing to instruct the jurors that he would dismiss them as a hung jury if still deadlocked, because such conduct coerced the return of a 10 to 2 verdict within minutes after the jury returned to its deliberations.

██ · The length of time that a jury is to deliberate is within the wide latitude of discretion vested in the trial court. *Conrey v. McGehee*, 473 S.W.2d 617 (Tex.Civ.App.— Houston [14th Dist.] 1971, writ ref'd n. r. e.). It is only when a verdict is coerced by the trial court that error is committed.

██ We hold that the failure of the trial court to disclose to the jury his intent, which the record does not reflect, to shortly release them if they were honestly deadlocked did not constitute an abuse of discretion. There is no evidence that the trial court's reticence in directing the jury to deliberate further coerced a verdict to the prejudice of the Karells. We overrule the Karells' ninth point of error.

We affirm the judgment of the trial court except to the extent that the damages awarded exceed the damages pled for by the plaintiffs. We therefore reform the judgment so as to reduce the trial court's award to $9,000.00 ($.50 times 18,000).

The judgment of the trial court, as reformed, is affirmed.